RECEIVED

DEC 1 1 2013

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

AT 8:30_____M
WILLIAM T. WALSH CLERK

GRACIANO TIRADO,                    :
                                    :   Civil Action No. 12-4059 (JAP)
            Petitioner,             :
                                    :
        v.                          :   **OPINION**
                                    :
STATE OF NEW JERSEY, et al.,        :
                                    :
            Respondents.            :

**APPEARANCES:**

GRACIANO TIRADO, Petitioner *pro se*
# 472386
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

JOIE M. PIDERIT, ESQ.
MIDDLESEX COUNTY PROSECUTOR'S OFFICE
Appellate Section
25 Kirkpatrick Street
New Brunswick, New Jersey 08901
Counsel for Respondents

**PISANO**, District Judge

Petitioner Graciano Tirado ("Petitioner"), a convicted state prisoner presently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2003 New Jersey state court judgment of conviction. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

# I. BACKGROUND

## A. Procedural History

On June 26, 2002, a Middlesex County Grand Jury returned a four count indictment (Indictment No. 02-6-810) against Petitioner as follows: (Count One) murder, in violation of N.J.S.A. 2C:11-3a(1), (2); (Count Two) possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a; and (Counts Three and Four) aggravated assault with a firearm, in violation of N.J.S.A. 2C:12-1b(4). (Petitioner's Exhibit H,[1] June 26, 2002 Indictment No. 02-06-00810.)

Petitioner was tried before a jury and the Honorable Frederick P. DeVesa, P.J.Cr., from March 7, 2003 through March 9, 2003. (Ra8, State's Resp. Brief on Direct Appeal at 1.)[2] The jury returned a verdict of guilty on the murder and weapons charges. One count of aggravated assault was dismissed for lack of evidence and the jury acquitted Petitioner on the other count of aggravated assault. (PE-I, December 12, 2003 Judgment of Conviction.) On December 12, 2003, Judge DeVesa sentenced Petitioner to a 30-year term of imprisonment for the murder conviction and 10 years in prison for possession of a weapon for

---

[1] Petitioner submitted relevant portions of the state court record with his habeas petition, which are hereinafter designated as Petitioner's Exhibits ("PE") – A through T. (ECF No. 1-2 at pp. 1 through 140; ECF No. 1-3 at pp. 1 through 135.)
[2] The State provided the relevant state court record with a list of exhibits, hereinafter denoted as "Ra". (See ECF No. 15.)

an unlawful purpose, to be served concurrently. (Ra6, December 12, 2003 Sentencing Transcript at 15:15-16:3.)

Petitioner filed a notice of appeal before the Superior Court of New Jersey, Appellate Division on May 20, 2004. (Ra8 at 1.) In an unpublished opinion decided on February 6, 2006, the Appellate Division affirmed the convictions and remanded the sentence for merger of the weapons count into the murder count. (PE-J, February 6, 2006 Appellate Division Opinion, *State v. Tirado*, Docket No. A-5072-03T4 slip op. at 23.) The Supreme Court of New Jersey denied certification on April 28, 2006. *State v. Tirado*, 186 N.J. 607 (2006). Petitioner did not file a writ of certiorari with the Supreme Court of the United States. A judgment of conviction on the remanded sentence was entered on September 9, 2011. (Ra20.)

On May 26, 2006, Petitioner filed a petition for post-conviction relief ("PCR") in state court, alleging claims of ineffective assistance of trial and appellate counsel. (PE-L.) Oral argument was conducted before Judge DeVesa at a PCR hearing on March 9, 2007. On March 14, 2007, Judge DeVesa entered an Order denying the PCR application without an evidentiary hearing. (PE-M.) Petitioner appealed and on July 17, 2009, the Appellate Division affirmed the denial of the PCR petition. *State v. Tirado*, 2009 WL 2059727 (N.J. Super. A.D. Jul. 17,

3

2009). The Supreme Court of New Jersey denied certification on October 28, 2009. *State v. Tirado*, 200 N.J. 477 (2009).

Thereafter, on July 6, 2010, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *Tirado v. New Jersey, et al.*, Civil No. 10-3408 (JAP). On March 28, 2011, this Court summarily dismissed the petition on the ground that Petitioner's claim for relief from the state court judgment of conviction failed to state a cognizable claim of a federal constitutional violation.[3] The Court also determined that the petition must be dismissed for failure to exhaust state court remedies. *Tirado v. State of New Jersey, et al.*, Civil No. 10-3408 (JAP), 2011 WL 1256624, *4-5 (D.N.J. Mar. 28, 2011). On or about June 17, 2011, Petitioner filed a motion for reconsideration with the Supreme Court, raising the same claims he had asserted in his first federal habeas petition. (PE-R.) By Order filed September 9, 2011, the Supreme Court of New

---

[3] Petitioner had alleged that he is a sovereign, not subject to New Jersey law; that he is a "man" and not a "person" subject to *in personam* jurisdiction; and that he is a "man" immune and exempt from state jurisdiction. He further asserted that he is a "vessel" or "straw man", and that the State of New Jersey, and its courts, prosecutors and correctional department had no authority or jurisdiction over Petitioner. This Court found that the Petitioner's claims were "nothing more than a delusory contrivance by Petitioner in an attempt to void his state judgment of conviction." *Tirado v. State of New Jersey, et al.*, Civil No. 10-3408 (JAP), 2011 WL 1256624, *4 (D.N.J. Mar. 28, 2011).

4

Jersey granted Petitioner's motion for leave to file his motion for reconsideration as within time, and summarily denied the motion for reconsideration. (Ra19; PE-S.)

On June 20, 2012, Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2254. (ECF No. 1.)[4] On August 8, 2012, Petitioner filed a motion for an Order to Show Cause. (ECF No. 4.) On September 17, 2012, Petitioner filed a motion for default judgment against the State. (ECF No. 8.) On October 4, 2012, this Court issued an Order directing the State to answer the petition. (ECF No. 9.) Thereafter, on October 24, 2012, Petitioner filed a motion for relief from the Court's October 4, 2012 Order. (ECF No. 14.) The State filed its answer to the petition with a copy of the relevant state court record on November 14 and 15, 2012. (ECF Nos. 16, 17, 18, 19 and 20.) On December 7, 2012, Petitioner filed a fourth motion seeking default judgment against the State, labeled as a "Reply to Answer for Relief Due to Lack of Jurisdiction, Failure to Counter Claim and Failure to State a Claim." (ECF No. 21.) In a Memorandum Opinion and Order filed on March 25, 2013, this Court denied all four of Petitioner's motions. (ECF No. 23.)

---

[4] "ECF" refers to the docket entry or "electronic case filing" number for documents filed in this action, Civil No. 12-4059 (JAP).

On May 2, 2013, the State filed a supplemental letter response to the petition. (ECF No. 25.)

On May 3, 2013, Petitioner filed a "motion for rehearing" of this Court's March 25, 2013 decision. (ECF No. 26.) This motion essentially seeks reconsideration of the Court's denial of Petitioner's earlier motions. (*Id.*) Finally, on October 2, 2013, Petitioner filed a motion for judgment on the pleadings. (ECF No. 29.)

B.  Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will reproduce the recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division, decided on February 6, 2006, with respect to Petitioner's direct appeal:

> The victim of the charged homicide was Zoila Mena, defendant's ex-girlfriend. Mena lived at 107 Baldwin Street, New Brunswick with her two adult sons, Aaron and Augustine. On February 9, 2002, shortly after 3:00 p.m., Mena returned home from running some errands. Defendant was on the porch. As she walked past him toward the front door, defendant shot her twice, in the back and in her left temple. Hearing the shots, Aaron came outside to find his mother in a pool of blood. As he knelt by his mother to render assistance, he claimed that defendant put a gun to his head and ordered him inside. Aaron went inside and called the police. However, a witness testified that both Aaron and Augustine came outside and defendant merely motioned for them to go back into the house, which

they did. The witness did not see defendant put a gun to Aaron's head, although he did have a gun in his hand.[5]

After shooting Mena, defendant left the porch and walked down the block. He returned almost immediately and waited on the porch until the police arrived. The first responding officer found the gun on the porch, next to defendant. Mena was taken by ambulance to the hospital where she died. Defendant was taken to police headquarters where he was interrogated by two officers, with another officer acting as their interpreter. Beginning at 6:00 p.m., a fourteen-minute taped statement was taken from defendant in which he admitted shooting Mena. He claimed that he had asked Mena where she had been that morning and she replied that it was none of his business. According to his statement, Mena cursed at him and said she was going to get her sons to attack him. Fearful that he would be killed, defendant grabbed a gun which was hidden in a pipe and shot twice. He said that he lost his mind and was confused. Defendant claimed that he had purchased the gun from Aaron, a claim which Aaron denied.

At trial, defendant presented the testimony of Dr. Elias Fernandez, a forensic psychologist, that defendant was intoxicated at the time of the offense and, as a result, he lacked the ability to act knowingly or purposely. Dr. Fernandez testified that defendant was functionally illiterate, and that he believed him to be in the borderline range of cognitive functioning. Dr. Fernandez opined that defendant's limited intellectual functioning, in conjunction with his ingestion of alcohol, impaired his reasoning to the extent that he acted recklessly.

Defendant had informed Dr. Fernandez, in an interview, that prior to the shooting, he consumed several beers each day, and on the weekend he drank even more. Defendant tended to minimize the extent of his drinking; he did not perceive it to be a problem. On the day of the shooting, defendant claimed to have

---

[5] Defendant was acquitted of aggravated assault on Aaron.

consumed a 24-ounce beer, a pint of blackberry brandy, and a "pocket-sized" bottle of alcohol.

Dr. Fernandez testified that, according to what he learned from defendant, when Mena returned from a visit to the Dominican Republic, her romantic relationship with him became contentious. Defendant became distraught and dysphoric upon learning that Mena was still married to a man in the Dominican Republic and that she had lied to him about their relationship. Defendant became enraged, and his emotional anger, coupled with the alcohol and his poor reasoning, led to the shooting.

Dr. Fernandez had listened to the tape of defendant's statement to the police. In that statement, defendant was clear and oriented. Dr. Fernandez concluded, however, that based on the shock produced by the shooting and the police involvement, Tirado became "hyperaroused," which rendered him both coherent and alert.

Dr. Antonio Almoquera Abad, a forensic psychiatrist, testified in rebuttal as the State's psychiatric expert. Dr. Abad opined that defendant "did not meet any diagnosis for major mental disorder at the time [of the shooting] nor mental retardation. In regard to the effect of alcohol, there is no evidence that I have access to, no evidence documenting a state of alcohol intoxication." Dr. Abad diagnosed defendant as suffering from alcohol abuse, rather than alcohol intoxication. Tirado had indicated to Dr. Abad that he consumed alcohol prior to the shooting, but Dr. Abad could not see any behavioral manifestation substantiating defendant's intoxication. He concluded, however, that defendant had a chronic problem with alcohol.

Dr. Abad disagreed with Dr. Fernandez's conclusion that Tirado had a borderline mental capacity. He also stated that while a shocking event might have a momentary impact on a person's state of intoxication, such stress is hardly ever followed by the disappearance of the state of alcohol intoxication.

(PE-J, February 6, 2006 Appellate Division Opinion, *State v. Tirado*, Docket No. A-5072-03T4 slip op. at 2-6.)

## II.  STATEMENT OF CLAIMS

### A.  Petitioner's Claim for Habeas Relief

Petitioner asserts the following claims for relief in his habeas petition:

Ground One:  Petitioner's evidence of intoxication merits an evidentiary hearing on an insanity and diminished capacity defense.

Ground Two:  The conviction based on aggravating factors must be vacated for lack of proof of aggravating circumstances.

Ground Three:  Petitioner adopts by reference his arguments raised in his state PCR proceedings, namely, that counsel was ineffective for failing to call witnesses to substantiate or expand upon his intoxication defense.

Ground Four:  Petitioner adopts by reference his arguments submitted in his motion for reconsideration before the Supreme Court of New Jersey, namely, that the assistant prosecutor does not have the authority to act on behalf of the Attorney General of the State of New Jersey, and the State of New Jersey, its courts and prosecutor have no jurisdiction over Petitioner.

Ground Five:  Cumulative trial errors and ineffective assistance of trial counsel deprived Petitioner of a fair trial.

(Petition and Memorandum of Law, ECF No. 1 at ¶ 12; ECF No. 1-1 at 6-23.)

## B. The State's Response and Affirmative Defenses

The State argues that the petition lacks substantive merit. The State also asserts the following affirmative defenses: (I) the petition is time-barred under 28 U.S.C. § 2244(d); (II) the petition fails to state a claim for which habeas relief may be granted; (III) Petitioner failed to exhaust his state court remedies with respect to Grounds One, Two and Five; and (IV) if Ground One, Two and Five are deemed exhausted, they are subject to procedural default. (Answer, ECF No. 15 at 8-28.)

### A. *Timeliness Issue*

This Court finds that the habeas petition is not time-barred. Petitioner had filed a motion for reconsideration before the Supreme Court of New Jersey promptly after this Court had dismissed Petitioner first habeas application, without prejudice, for non-exhaustion of state court remedies. The Supreme Court of New Jersey granted Petitioner's application for leave to file the motion for reconsideration as within time, and then summarily denied the motion for reconsideration on September 9, 2011. (Ra19; PE-S.) An amended judgment of conviction was then entered on September 9, 2011. (Ra20.) This

habeas application was filed on June 20, 2012, within the one-year statute of limitations under 28 U.S.C. § 2244(d).[6]

B. *Exhaustion and Procedural Bar*

To the extent that any of the claims asserted by Petitioner are unexhausted, as argued by the State, this Court may deny such claims on the merits, notwithstanding Petitioner's failure to exhaust his state court remedies, because they are facially meritless and warrant denial of habeas relief under 28 U.S.C. § 2254(b)(2). *See Mahoney v. Bostel*, 366 F. App'x 368, 371 (3d

---

[6] The timeliness of a § 2254 habeas petition is governed by 28 U.S.C. § 2244(d), which states in relevant part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, pursuant to the applicable statute of limitations provision, evaluating the timeliness of the instant petition first requires a determination of when petitioner's state court judgment became final. The judgment is determined to be final by the conclusion of direct review, or the expiration of time for seeking such review, including the ninety-day period for filing a petition for writ of certiorari in the United States Supreme Court. *See Gonzalez v. Thaler*, --- U.S. ----, 132 S.Ct. 641, 653-54, 181 L.Ed.2d 619 (2012).

Cir. 2010). *See also Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack merit. Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

Finally, the Court finds no clear-cut procedural default in this case. The Supreme Court recently discussed the issue of procedural default in *Martinez v. Ryan*.

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law.

--- U.S. ----, ----, 132 S.Ct. 1309, 1316, 182 L.Ed.2d 272 (2012) (citations omitted). *See also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.")

Here, there is no indication that the state courts declined to hear any of Petitioner's claims based on Petitioner's failure to abide by a state procedural rule. Indeed, the Supreme Court of New Jersey allowed Petitioner's motion for reconsideration (in which Petitioner superficially and unskillfully asserted his various claims for relief) *nunc pro tunc* before summarily denying relief. A state court may render adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. *See Fahy v. Horn*, 516 F.3d 169, 202-03 (3d Cir. 2008). Thus, none of Petitioner's claims in this habeas petition, if raised before the state courts, were dismissed by the state courts with either an express or implicit statement indicating refusal to review that claim on merits.

13

Consequently, the State's procedural bar argument is facially misplaced. While some claims of Petitioner's claims may not have been raised before the state courts, these claims cannot be deemed procedurally barred; rather, being left unexhausted, they are subject to review under the Court's § 2254(b)(2) mandate as discussed above.

Accordingly, the Court now turns to the merits of Petitioner's claims for habeas relief.

## III.  STANDARD OF REVIEW

A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Campbell v. Burris*, 515 F.3d 172, 185-86 (3d Cir. 2008); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). Thus, because Petitioner is proceeding as a *pro se* litigant in this matter, the Court will accord his habeas petition the liberal construction intended for *pro se* petitioners.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court has jurisdiction to entertain a petition for federal habeas relief as follows:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Section 2254(d) of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012).

"Clearly established Federal law" should be determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, ---U.S. ----, 132

**15**

S.Ct. 38, 181 L.Ed.2d 336 (2011); *Cullen v. Pinholster*, 563 U.S. ----, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir.2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir. 2004)(citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S.Ct. at 2155. The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274-75. Few

state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. *See Harrington v. Richter*, 562 U.S. ----, ----, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (Under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." (quoting *Williams* at 410)); *see also Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S.Ct. at 786-87.

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *See Felkner v. Jackson*, ---U.S. ----, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011)("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); *Cullen v. Pinholster*, 131 S.Ct. at 1398; *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013), *cert. denied*, *Lamas v. Eley*, 134 S.Ct. 254 (U.S. Oct. 7, 2013). *See also Harrington*, 131 S.Ct. at 786 ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("whether the trial judge was right or wrong is not the pertinent question

18

under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold."); *Lockyer*, 538 U.S. at 75 ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous."). Further, AEDPA's standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013)(quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)(citing, *inter alia*, 28 U.S.C. § 2254(d)(2)). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); see also *Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of "rebutting

the presumption by 'clear and convincing evidence.'" (quoting 28 U.S.C. § 2254(e)(1)); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)(factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id*. (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief under AEDPA, the court may grant the writ only if the error was not harmless. Under the harmless error standard, the court must "assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). The court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)(quotation omitted); *Eley v. Erickson*, 712 F.3d at 847.

IV.  DISCUSSION

A.  Ineffective Assistance of Counsel

The Court first addresses Petitioner's claim that he was denied his Sixth Amendment right to effective assistance of counsel.  Petitioner relies upon the arguments raised on appeal from denial of his state court PCR petition.  Namely, Petitioner alleges that his trial counsel failed to call witnesses who would substantiate or expand upon his intoxication defense. Notably, Petitioner has not provided any corroborating documents, certifications or other evidence identifying these purported witnesses to his intoxication.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the U.S. Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To show prejudice under *Strickland*, Petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rainey v. Varner*, 603 F.3d 189, 197-98 (3d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694).  "The benchmark for judging any

claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, 712 F.3d 784, 797-98 (3d Cir. 2013).

"Since *Strickland*, the Supreme Court and the Third Circuit have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013); *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009)(citing cases). When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 131 S.Ct. at 785). For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (internal quotation marks omitted)(emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly

deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under Strickland, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

In this case, the Appellate Division rejected Petitioner's claim of ineffective assistance of trial counsel, noting that Petitioner "presented no evidence during the PCR proceedings, ..., that any such witnesses existed or were available to testify at the time of trial." *State v. Tirado*, 2009 WL 2059727 at *1. Relying substantially on the PCR record, the Appellate Division recited Judge DeVesa's findings at length:

In the trial the defendant had produced an expert witness, Doctor Fernandez, who testified that the defendant, based upon his review of the reports and his interview of the defendant, was intoxicated, and the State produced an expert who testified that the defendant was not suffering from any major disorder of the mind that would provide a defense and that although he might have had a long-term history of alcohol abuse[,] there was nothing in the record to support the fact that he was so intoxicated at the time as to provide him with a defense or mitigation to the charge of murder.

In this case there was no real evidence of intoxication and, indeed, a number of witnesses who were present at or about the time of the shooting had been questioned at the trial and they indicated that the defendant did not smell of alcohol, that he was walking and talking without difficulty and, of course, the [c]ourt had the benefit of the confession of the defendant which was testified to and made clear that

the defendant, at least shortly after the shooting, was very coherent and was not apparently impaired in any way.

Clearly, for one to raise a defense of intoxication or even a mitigating factor of intoxication, one's faculties really have to be significantly impaired; and the evidence that was presented in the trial which the jury found obviously persuasive was simply that he was not intoxicated and they rejected the testimony of his expert witness who simply was not present and who apparently was not persuasive in rendering such a conclusion.

. . . .

In this case the petition is simply insufficient in that the petitioner has only alleged that his trial lawyer failed to call any witnesses to support his claim of intoxication, but there are no certifications, there are no affidavits from any witnesses, and this [c]ourt has absolutely no basis to conclude that there are any such witnesses.

Again, during the course of the trial those witnesses who were located and did come to [c]ourt all testified at variance with this alleged defense of intoxication, again, with the exception of the defendant's expert.

So, based on the evidence that was presented, the testimony of those people who were able to offer testimony on the issue of intoxication, the lack of any indication here in the defendant's petition that there were, indeed, witnesses who might have testified as to the defendant's state of intoxication, not to mention a degree of intoxication that would have set up a claim of diminished capacity, the [c]ourt simply finds that the defendant has not made out a prima facie case for ineffective assistance[ ][of] counsel and, therefore, the petition for post[-]conviction relief must be denied.

*Id.*, 2009 WL 2059727 at *2.

Accordingly, the Appellate Division ruled that Petitioner had failed to meet *Strickland*'s two-pronged test of deficient performance and prejudice. The court further observed that trial counsel rendered competent representation by producing an expert witness to support the intoxication defense. The court reasoned that, "[h]ad any eyewitnesses to that intoxication been available, it is, therefore, likely that trial counsel would have produced them at trial. Defendant's silence as to the identity and/or availability of any such witnesses is most telling. As the [PCR] judge noted, witnesses to the shooting 'testified at variance with this alleged defense of intoxication....'" *Id*. At best, the court concluded, Petitioner's ineffectiveness of counsel claim "barely rises to the level of speculation." *Id*.

Having carefully reviewed the state court record, this Court likewise concludes that Petitioner has failed to make a *prima facie* showing of ineffectiveness of trial counsel under the *Strickland* standard. Petitioner has not provided any factual basis, witness certifications, or any other evidence, other than his speculative conjecture, to support his claim that counsel failed to substantiate or expand his intoxication defense. Petitioner has not identified any potential witness that was not called, and he has not specified what further

investigation was necessary for counsel to substantiate his intoxication defense. "[C]ounsel has a duty to make [only] reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. *See also Echols v. Ricci*, 2011 WL 3678821 (D.N.J. Aug. 19, 2011), *aff'd*, 2012 U.S. App. LEXIS 14803 (3d Cir. July 19, 2012). In this case, the state courts expressly noted the purely speculative nature of Petitioner's claim and observed that counsel vigorously pursued the intoxication defense by use of an expert witness, which was the only means to support the intoxication defense in light of the contradictory witness testimony against Petitioner's intoxication.

Simply stated, Petitioner has failed to demonstrate deficient performance by trial counsel in presenting an intoxication defense that would have had any effect of undermining the verdict. Therefore, this Court concludes that the determinations of the state PCR court and appellate court in denying Petitioner's ineffectiveness of trial counsel claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law under *Strickland*, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Parker*,

132 S.Ct. at 2151; *Williams*, 529 U.S. at 413. Accordingly, the Court will deny federal habeas relief on Petitioner's claim of ineffective assistance of trial counsel because this claim is substantively meritless.

## B. Intoxication Defense

In Ground One of his petition, Petitioner asserts that the trial court should have conducted an evidentiary hearing with regard to intoxication evidence because it was relevant to insanity and diminished capacity defenses. Petitioner also seems to claim that intoxication evidence showing mental defect should have been considered by the trial court at the time of his sentence as a mitigating factor.

This claim is essentially duplicative of Petitioner's ineffective assistance of counsel claim regarding counsel's failure to call witnesses to substantiate his intoxication defense, as discussed in the preceding section of this Opinion. The State reiterates, in its answer to the petition, that Petitioner had presented a full defense on the issue of intoxication at trial (by producing an expert witness), which ultimately was rejected by the jury, and upheld by the state courts on review. Thus, the State contends that Petitioner's claim should be denied here as well.

As discussed above, the state courts properly concluded that an evidentiary hearing on the issue of counsel's failure to call witnesses concerning Petitioner's intoxication and diminished capacity was not warranted because the witnesses who were present and who testified at trial did not corroborate Petitioner's intoxication defense, and because Petitioner gave no indication as to those witnesses who might have testified as to Petitioner's intoxication. *Tirado*, 2009 WL 2059727 at *2. The court specifically held that "there was nothing in the record to support the fact that [Petitioner] was so intoxicated at the time as to provide him with a defense or mitigation to the charge of murder." *Id.* Thus, the Court finds that the state court decisions regarding Petitioner's intoxication defense were neither contrary to, nor involved an unreasonable application of, clearly established federal law. Further, the state court decisions did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Parker*, 132 S.Ct. at 2151; *Williams*, 529 U.S. at 413.

The State further argues, however, that Petitioner is not entitled to an evidentiary hearing because he failed to develop the factual basis for his claim in state court and has not otherwise met the standard under 28 U.S.C. § 2254(e)(2), which

28

permits evidentiary hearings by the federal court under very narrow circumstances.

A district court is permitted to hold an evidentiary hearing on a claim asserted in a § 2254 petition so long as such a hearing is not barred by 28 U.S.C. § 2254(e)(2). Under that section, a habeas court is barred from holding an evidentiary hearing unless the petitioner was diligent in his attempt to develop a factual basis for his claim in the state court proceedings, *see Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010), or the petitioner satisfies the criteria set forth in § 2254(e)(2). Section 2254(e)(2) requires the petitioner to show that the claim relies on a new and retroactive rule of constitutional law or a factual predicate that could not previously have been discovered through the exercise of due diligence, and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Palmer*, 592 F.3d at 392 (quoting 28 U.S.C. § 2254(e)(2)(A) and (B)).

The decision to grant such a hearing rests in the discretion of the district court." *Schriro*, 550 U.S. at 468; *Palmer*, 592 F.3d at 393. In *Schriro*, the Supreme Court

instructs that a district court should consider two related factors in its exercise of discretion as to whether to hold an evidentiary hearing: (1) "whether the petition presents a *prima facie* showing which, if proven, would enable the petitioner to prevail on the merits of the asserted claim," and (2) whether the factual allegations "are contravened by the existing record." *Palmer*, *supra* (quoting *Schriro*, 550 U.S. at 474-75.

In this case, Petitioner has not even attempted to meet the threshold criteria of § 2254(e)(2). Certainly, the claim that he was not able to fully present his intoxication defense does not rely on either a new rule of constitutional law or a factual predicate that could not previously have been discovered through due diligence. Indeed, Petitioner still fails to identify the witnesses he alleges are necessary to substantiate his intoxication defense.

Moreover, as observed by the state courts, the testimony of witnesses at trial refutes Petitioner's intoxication at the time of the offense. *Tirado*, 2009 WL 2059727 at *2, 3 (noting that "witnesses to the shooting 'testified at variance with this alleged defense of intoxication'").

Therefore, the Court finds that the petition fails to make a *prima facie* showing of a potentially meritorious claim, and the evidence at trial clearly contravenes the intoxication

defense. Petitioner is not entitled to an evidentiary hearing, and this claim is denied for lack of merit.

## C. Sentencing Claim

Petitioner next asserts that his thirty-year prison term is cruel and unusual punishment and violates due process. (Petition, ¶ 12 at Ground Two.) He also challenges the sentencing court's consideration of aggravating factors. (*Id.*) Petitioner did not raise these claims on state court review.

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *Yorio v. New Jersey*, Civil No. 10-5335 (JAP), 2012 WL 3133948, *3 (D.N.J. Jul. 31, 2012) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)). Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation. *See Yorio, supra. See also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). Essentially, the Eighth

31

Amendment forbids only extreme sentences that are "grossly disproportionate" to the crime. *Ewing*, 538 U.S. at 23. The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(1) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292 (1983).

Reviewing Petitioner's Eighth Amendment claim, this Court finds that Petitioner has failed to present any cogent argument as to why or how his sentence is unconstitutional. There is no evidence that Petitioner's sentence is grossly disproportionate to the crime he committed. Indeed, the New Jersey Supreme Court has held that there is no presumptive term for murder, but that "the standard range for murder is a sentence between thirty years and life imprisonment." *Bueno v. Bartkowski*, Civil No. 11-1631 (FLW), 2012 WL 32937, *10 (D.N.J. Jan. 6, 2012) (quoting *State v. Abdullah*, 184 N.J. 497, 507 (2005)). Here, Petitioner received a 30-year prison term, plainly at the low end of the standard range for a murder conviction.

Petitioner's due process claim also fails to explain how the sentencing court erred in considering aggravating factors to assess his sentence. Specifically, the sentencing court determined that the single aggravating factor (deterrence) and mitigating factor (no prior criminal record) were in "equipose." (Ra20.) Thus, it is apparent that the state court did not impose a sentence on Petitioner on the basis of any aggravating factor. At best, Petitioner may be attempting to claim that the court should have considered his intoxication as a mitigating factor. However, as demonstrated in the preceding sections of this Opinion, there was nothing in the state court record to support Petitioner's intoxication defense sufficient to mitigate the charge of murder.

Therefore, Petitioner's claim under Ground Two of his petition, asserting that his sentence violates federal constitutional limitations, is without merit and is denied accordingly.

D. Ground Four of the Petition

In Ground Four of his habeas application, Petitioner refers to the arguments raised in his motion for reconsideration before the Supreme Court of New Jersey, which was summarily denied without opinion. In his motion for reconsideration, Petitioner

claimed that "the lower 'inferior' courts proceeded in the cause without proper jurisdiction." (PE-R at 3.)

Petitioner pursued this claim in state court after having filed his first federal habeas petition before this Court. In that first habeas petition, Petitioner also was claiming that the State of New Jersey, its courts, public defenders, prosecutors and correctional department, lacked jurisdiction to convict him and that his conviction is a void judgment. *See Tirado*, 2011 WL 1256624 at *2. This Court summarily dismissed Petitioner's claim as having "absolutely no legal basis." *Id*. at *4.

Because this claim has been adjudicated on its merits, Petitioner is precluded from raising the same claim in this action. Therefore, Ground Four of the petition is denied.

E. Cumulative Errors

Finally, Petitioner argues that the cumulative errors at trial coupled with his trial counsel's ineffective assistance denied him a fair trial. Petitioner fails, however, to specify the cumulative errors at trial. This claim was not exhausted on state court review.

While "[i]ndividual errors that do not entitle a petitioner to relief may do so when combined," *Fahy*, 516 F.3d at 205, the test for a cumulative error claim is whether the overall

34

deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). *See also Cox v. Warren*, Civil No. 11-7132 (FSH), 2013 WL 6022520, * 10 (D.N.J. Nov. 13, 2013); *Merritt v. Bartkowski*, Civil No. 11-3756 (JAP), 2013 WL 4588722, *20 (D.N.J. Aug. 28, 2013). "Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Albrecht v. Horn*, 471 F.3d 435, 468 (3dd Cir. 2006) (citing *Brecht*, 507 U.S. at 637).

Here, as deliberated above, Petitioner has failed to assert any individual error of constitutional magnitude. Likewise, there is no basis or merit for habeas relief on the grounds of an alleged accumulation of the errors that, in reality, did not exist. Therefore, this claim is denied as patently meritless.

## V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the

denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI. CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue. Petitioner's motions for a rehearing and for judgment on the pleadings (ECF Nos. 26 and 29) are denied as moot. An appropriate Order follows.

JOEL A. PISANO
United State District Judge